MICHELE BARR ALLEN, Plaintiff v. HARVEY H. ALLEN, Defendant

No. COA03-1702

(Filed 1 February 2005)

**1. Divorce— equitable distribution—findings—diminution of stock value**

An equitable distribution order was remanded for further findings about whether the diminution of stock value during the separation was the result of defendant's actions. If not, the decline in stock value is included in the equitable distribution of marital and divisible property; if so, the diminution may be considered as a distributional factor.

**2. Divorce— equitable distribution—presumption for in-kind division—closely held corporation**

An equitable distribution order was remanded for further findings about the in-kind distribution presumption where there was evidence that defendant's business was a closely held corporation not susceptible to division.

**3. Divorce— equitable distribution—tax refund—marital property**

The trial court did not err in an equitable distribution action by classifying a tax refund as marital property. The refund was not included on the stipulated list of marital property, but plain-

ALLEN v. ALLEN

[168 N.C. App. 368 (2005)]

tiff did not waive the inclusion of unlisted property in the equitable distribution. Furthermore, funds received after the separation may be considered marital property when the right to receive those funds was acquired before the separation.

**4. Divorce— equitable distribution—corporate profits— owned by corporation**

The trial court erred in an equitable distribution action by distributing profits from a Subchapter S corporation as marital property. Profits of a Subchapter S corporation are owned by the corporation, not by the shareholders.

**5. Divorce— equitable distribution—IRA**

The trial court erred in an equitable distribution case by not distributing plaintiff's IRA where the parties included it on their list of marital property and stipulated to its value.

**6. Divorce— equitable distribution—distributive award— source of assets**

The trial court did not err in an equitable distribution action, as defendant contended, by failing to point to a source of liquid assets from which defendant could pay a distributive award. The court entered findings on the income generated by defendant's business and the equity in the marital home, which was awarded to defendant. There was no concern here that defendant might incur adverse tax consequences (which the court must take into account).

Appeal by defendant from judgment entered 23 June 2003 by Judge Robert J. Stiehl, III in Cumberland County District Court. Heard in the Court of Appeals 16 September 2004.

*Hedahl & Radtke, by Debra J. Radtke, for plaintiff-appellee.*

*Reid, Lewis, Deese, Nance & Person, L.L.P., by Renny W. Deese, for defendant-appellant.*

ELMORE, Judge.

Harvey H. Allen (defendant) appeals from a judgment of equitable distribution. For the reasons discussed herein, we reverse in part and remand for further findings on the basis for the distributive award.

Defendant and Michele Barr Allen (plaintiff) were married on 28 April 1984, separated on 25 June 2000, and divorced on 5 September

2001. The parties adopted two children during the marriage. Defendant, a licensed engineer, started an engineering firm where plaintiff was an employee and 25 percent shareholder. Defendant continued to operate the business after the parties' separation.

Plaintiff filed this action on 18 July 2000 seeking, *inter alia*, an equitable distribution of property. Defendant was awarded custody of the minor children and exclusive possession of the marital home. The parties signed a pre-trial order and stipulated to a schedule listing all property to be distributed by the court. This schedule included several investment accounts with their values on the date of the parties' separation. Defendant's evidence at trial tended to show, and plaintiff does not dispute, that the value of the accounts declined between the date of separation and the date of distribution.

In its 23 June 2003 equitable distribution order, the trial court made the following findings regarding an equitable distribution:

That the Court has considered as distributional factors, the following:

a. The income, property and liabilities of each at the time the division is effective;

b. The 16 year 2 months length of marriage, the parties' age and health;

c. The need of Defendant to occupy the residence due to the children;

d. The contributions of Plaintiff/wife in assisting in the business;

e. The liquidity of the investment' accounts and the Defendant's control over those accounts during the separation.

. . .

That as a divisible factor, the Court has also considered the diminution in value of the stocks that occurred after the date of separation.

The court concluded that an equal division of the property was fair and divided the marital property listed on the pre-trial schedule, with the exception of an IRA account in plaintiff's name. The court then ordered the following additional distribution:

5. That the Defendant is to pay the $5,203.00 of the company profit sharing plan, that he indicated had been paid to [plaintiff]

and one half of the 1999 income tax refund in the amount of $5490.00 for a total of $10,693.00.

6. That the Allen-Kimley business is awarded to the Defendant and that he is solely responsible for all debt and liability thereon.

7. That the Defendant shall owe the Plaintiff a distributive award of $223,530.00 with a credit of $15,000 previously paid as an interim distributive award leaving $208,530 due, along with the $10,693.00 for a total of $219,223.00.

8. That the Defendant shall pay the $219,223.00 by paying $10,000.00 at the closing of his refinancing the marital home within 30 days of the entry of this order and the remaining $209,223 within six years at the rate of $17,435.25 every six months at eight percent (8%) interest.

I.

[1] By his first assignment of error, defendant argues that the diminution in value of the parties' investment accounts after the date of separation and prior to the date of distribution should be classified as divisible property. The court distributed the accounts at their date of separation values. Defendant's evidence at trial indicated that the value of the accounts had declined considerably following the date of separation. Plaintiff contends that the trial court properly viewed the decline in stock value as a distributional factor.

In equitable distribution actions, the trial court is required to classify, value, and distribute the marital and divisible property of the parties. *Fountain v. Fountain*, 148 N.C. App. 329, 332, 559 S.E.2d 25, 29 (2002). Once the court classifies property as marital or divisible property, it must distribute that property equitably. *Larkin v. Larkin*, 165 N.C. App. 390, 598 S.E.2d 651, 655 (2004). Divisible property is defined in part as follows:

All appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, except that appreciation or diminution in value which is the result of post-separation actions or activities of a spouse shall not be treated as divisible property.

N.C. Gen. Stat. § 50-20(b)(4)(a) (2003). Any appreciation or diminution due to a spouse's post-separation activities may be considered by the trial court as a distributional factor. *See, e.g., Hay v. Hay*, 148

N.C. App. 649, 655, 559 S.E.2d 268, 273 (2002) (trial court may treat post-separation mortgage payments as a distributional factor); *Larkin*, 165 N.C. App. at 396, n. 2, 598 S.E.2d at 655 (parties' post-separation withdrawals from a joint checking account could not be considered divisible property given their actions in actively depleting it without accounting to each other).

Here, the trial judge made a specific finding that the investment accounts were under defendant's control during the separation period. It is undisputed from the record that plaintiff and defendant held two Prav AmeriTrade accounts (AmeriTrade accounts) jointly and several accounts with Aim Fund Centura (Aim accounts). The record shows that defendant was a day trader and traded on the AmeriTrade accounts during the marriage, but that he ceased this trading activity prior to the separation. Evidence of plaintiff's access to certain accounts after the separation was contradictory. Defendant testified that plaintiff continued to have access to the AmeriTrade accounts after the separation. Plaintiff testified that she could not gain access to the parties' Aim accounts because they were in the company's name and could be signed over to her only by the company's president or an officer.

After examining the record, we conclude that there is insufficient evidence to determine whether defendant's actions contributed to the diminution of the stock value after the separation date. We, therefore, reverse the trial court on this assignment of error and remand to allow the court to make additional findings of fact on whether the diminution in stock value was the result of defendant's post-separation actions. If the court determines that the diminution in value was not attributable to defendant's actions, then the court must include the stock decline in the equitable distribution of marital and divisible property. *See* N.C. Gen. Stat. § 50-20(a) (2003). Conversely, if the court finds that the diminution was the result of the actions of defendant, then the diminution may be considered as a distributional factor. N.C. Gen. Stat. § 50-20 (c)(11a) (2003) (acts of either party to "waste, neglect, devalue or convert the marital property or divisible property, during the period after separation of the parties and before the time of distribution").

II.

[2] By his next assignment of error, defendant argues that the court failed to state a finding sufficient to indicate its basis for entering a distributive award. We agree. N.C. Gen. Stat. § 50-20(e) (2003)

creates a presumption that an in-kind distribution of marital or divisible property is equitable, but permits a distributive award "to facilitate, effectuate, or supplement" the distribution. The judgment of equitable distribution must contain a finding of fact, supported by evidence in the record, that the presumption in favor of an in-kind distribution has been rebutted. *Heath v. Heath*, 132 N.C. App. 36, 38, 509 S.E.2d 804, 805 (1999). In the instant case, the trial court did not make findings pertaining to the presumption that an in-kind division of the property was equitable. Yet, the record contains evidence that defendant's business was a closely held corporation and not susceptible of division. Such evidence would support a finding that the in-kind presumption was rebutted. *Fountain*, 148 N.C. App. at 339, 559 S.E.2d at 33 (when the property interest is a closely held corporation, the presumption may be rebutted). We remand for the entry of further findings of fact regarding the basis for the court's distributive award.

## III.

[3] Defendant's next assignment of error challenges the court's award of $5,490.00, approximately one-half of the parties' 1999 federal income tax refund, to plaintiff. The record shows that the parties filed their federal income tax return jointly in 1999 and applied this tax refund toward the 2000 estimated income tax. In 2000, the parties filed separately. Both parties agree that the equitable distribution order contains a typographical error and that the correct value of one-half of the tax return was $5,940.00. The parties disagree, however, on the classification of this asset. Defendant contends that the parties did not include the tax refund on the stipulated list of marital property, and thus the evidence does not support a conclusion that this is a marital asset. We disagree.

Here, the parties signed a pre-trial order containing a stipulation that all property to be classified, evaluated, and distributed was disclosed on the attached schedules. When entered, this order was binding upon the parties as to all assets classified as marital property. *See Hamby v. Hamby*, 143 N.C. App. 635, 642-43, 547 S.E.2d 110, 114-15 (2001) (where parties stipulated in pre-trial order that retirement and deferred compensation plans were marital property, neither party could later challenge this classification). However, with respect to any property not listed in the pre-trial agreement between the parties, plaintiff has not waived its inclusion in the equitable distribution. *See Fitzgerald v. Fitzgerald*, 161 N.C. App. 414, 418, 588 S.E.2d 517, 521

(2003) (plaintiff spouse did not waive inclusion of defendant's profit-sharing plan in marital property distribution where parties did not enter into any agreement concerning the plan prior to trial). We hold that the trial judge did not err in considering the tax refund as marital property.

Defendant argues, nonetheless, that the tax refund was not "presently owned" by either spouse on the date of separation and therefore does not meet the definition of marital property. We reject this argument. Marital property is defined as "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property or divisible property . . ." N.C. Gen. Stat. § 50-20(b)(1) (2003). The spouse claiming that the property is separate bears the burden of proof, as under N.C. Gen. Stat. § 50-20(b)(1), "[i]t is presumed that all property acquired after the date of marriage and before the date of separation is marital property . . ." *Id.* Further, funds received after the separation may appropriately be considered as marital property when the right to receive those funds was acquired during the marriage and before the separation. *Rice v. Rice*, 159 N.C. App. 487, 495, 584 S.E.2d 317, 323 (2003). Therefore, the fact that the parties chose to defer receipt of this property does not change the character of it, as it was acquired during the marriage. *See Talent v. Talent*, 76 N.C. App. 545, 555, 334 S.E.2d 256, 262 (1985). The trial judge did not err in classifying the tax refund as marital property. On remand, the amount of the refund awarded to plaintiff can be corrected to $5,940.00.

## IV.

**[4]** Next, defendant assigns error to the court's award of a $5,203.00 profit sharing distribution to plaintiff. The trial court's distribution of this asset appears to be based upon testimony regarding defendant's 2001 reported income. The first reference in the record to this asset is within expert testimony concerning the valuation of the business. Defendant's 2001 income tax return indicated that during the previous year there was a $15,000 "pass-through" of earnings from the company, a Subchapter S corporation, and that plaintiff's share of this profit was $5,203.00. Defendant testified that he had not paid out a shareholder distribution in this amount to plaintiff.

As discussed *supra*, the fact that the profit sharing distribution was not included in the pre-trial list of property to be divided did not

ALLEN v. ALLEN

[168 N.C. App. 368 (2005)]

preclude the trial judge from considering it as such. However, the evidence does not support a finding or conclusion that this asset is marital property. Profits of a Subchapter S corporation are owned by the corporation, not by the shareholders, and are referred to as "retained earnings." *In re Marriage of Brand*, 44 P.3d 321, 325 (Kan. 2002). Income tax is paid by the shareholders, rather than the corporation, and income is allocated to shareholders based upon their proportionate ownership of stock. *Id.* Although North Carolina courts have not addressed the issue, other jurisdictions have held that as a general matter, retained earnings of a corporation are not marital property until distributed to the shareholders. *See, e.g., Robert v. Zygmunt*, 652 N.W.2d 537, 542 (Minn. App. 2002); *Thomas v. Thomas*, 738 S.W.2d 342, 344 (Tex. App. 1987); *Hoffman v. Hoffman*, 676 S.W.2d 817, 827 (Mo. 1984).

Here, defendant testified that he was not aware of the "pass-through" assets indicated on his 2001 tax return. Plaintiff has failed to meet her burden of proving that the retained earnings of the Allen business were acquired by either spouse during the marriage. As such, the evidence does not support a classification of the $5,203.00 earnings as marital property. Rather, the pass-through earnings were one component of the book value of the corporation. The trial court's distribution of the earnings as marital property was error.

V.

[5] Next, defendant argues that the trial court erred in failing to distribute plaintiff's Prav IRA account (IRA). The parties included this asset on the list of marital property attached to the pre-trial order and stipulated to its value on the date of separation.[1] In its findings, the trial court listed the marital property but failed to include plaintiff's IRA. Because the parties stipulated that plaintiff's IRA was property to be distributed and not separate property, the trial court erred in not including the IRA within the property division. *See Hamby*, 143 N.C. App. at 643, 547 S.E.2d at 115; *see also White v. Davis*, 163 N.C. App. 21, 29, 592 S.E.2d 265, 271 (2004) (stipulation in pre-trial order classifying defendant's interest in medical practice as marital property was binding on the court and the parties). We remand for the court to incorporate the IRA as marital property and properly distribute it.

---

1. On appeal, plaintiff does not contest the stipulated value of the IRA. The parties agree that a remand on this issue is proper.

VI.

[6] Finally, defendant argues that the court failed to point to a source of liquid assets from which defendant could pay the distributive award. We disagree. The trial court stated that defendant owed a total distributive award of $219,223.00 and "[t]hat Defendant shall pay the $219,223.00 by paying $10,000.00 at the closing of his refinancing the marital home within 30 days of the entry of this order and the remaining $209,223 within six years at the rate of $17,435.25 every six months at eight percent (8%) interest."

Defendant cites to the case of *Embler v. Embler,* 159 N.C. App. 186, 582 S.E.2d 628 (2003), as support for his argument that the court failed to specify a sufficient source of liquid assets from which he could make the distributive award payments. On the facts of this case, we believe that *Embler* is distinguishable. In *Embler,* the trial court ordered the defendant spouse to pay a distributive award of $24,876.00 within sixty days. The defendant argued on appeal that he had insufficient liquid assets and would incur penalties if he withdrew the necessary funds from his retirement accounts. A panel of this Court held that the trial court should have determined whether the defendant had sufficient liquid assets and adjusted the distributive award in order to offset any adverse financial consequences to be incurred by using non-liquid assets. *Embler,* 159 N.C. App. at 188-89, 582 S.E.2d at 630.

In the instant case, the trial court entered findings on the income generated by the Allen business in 2001 and on the equity in the marital home, which was awarded to defendant. Specifically, the court found that the business paid an income of $144,000.00 in 2001 and that defendant receives an additional $1,000.00 each month for renting space at the residence. With respect to the marital residence, the court found that as of the separation date it had been appraised at $327,000.00 and the net equity was $68,599.00, and that after the separation date defendant had increased the equity line. The court directed defendant to pay the initial $10,000.00 of the distributive award from the refinancing of the marital home. As the money derived from refinancing the mortgage on the marital home was a source of liquid funds available to defendant, the concern that defendant might incur adverse tax consequences by borrowing from non-liquid sources is not implicated here. *Embler,* 159 N.C. App. at 188-89, 582 S.E.2d at 630 (if defendant is to pay distributive award from non-liquid assets or by obtaining a loan, trial court must take tax consequences into account). Likewise, defendant's income from his

operation of the business was an obvious source of liquid assets available to pay the remainder of the award over a period of six years. Defendant's assignment of error is overruled.

Affirmed in part, reversed in part, and remanded.

Judges CALABRIA and STEELMAN concur.