DIANE S. WIRTH, Plaintiff v. PETER J. WIRTH, Defendant

No. COA07-1393

(Filed 18 November 2008)

**1. Divorce— equitable distribution—postseparation depreciation in business—cause could not be determined—divisible property**

The trial court erred in an equitable distribution action by failing to classify a postseparation decrease in the value of defendant husband's contracting business as divisible property and in treating the decrease as a distributional factor. Under the plain language of N.C.G.S. § 50-20(b)(4)(a), all appreciation and diminution in value of material and divisible property is presumed to be divisible property unless the trial court finds the change in value to be attributable to the postseparation actions of one spouse. The finding here clearly states that it was impossible to determine what portion of the decrease was due to forces beyond defendant's control and what amount was attributable to defendant's management of the company.

**2. Divorce— equitable distribution—consent order—subsequent increase in value of property**

The trial court did not err in an equitable distribution action by valuing a condo at the amount specified in the parties' consent order, even though the value of the condo had increased. Settlement of issues prior to equitable distribution trials will not

be discouraged by interpretations contrary to the express terms of contractual agreements.

### 3. Divorce— equitable distribution—interest on sale of residence—consent order—controlling

The trial court did not err in an equitable distribution action by not classifying, valuing, and distributing the interest earned on the proceeds of the sale of the former residence. A consent order provided that the net proceeds from the sale were to be distributed to plaintiff; once distributed, the proceeds became plaintiff's separate property.

### 4. Divorce— equitable distribution—marital debt—postseparation payments

The trial court in an equitable distribution action properly considered defendant's postseparation payments on marital debt and gave him a credit for those payments.

### 5. Divorce— equitable distribution—delays in producing documents—sanctions—attorney fees

The trial court did not abuse its discretion in an equitable distribution action in the imposition of attorney fees as a sanction for obstruction or delay of an equitable distribution proceeding or in the amount of the sanction. Contrary to defendant's contention, he had sufficient notice of the possibility of sanctions and the opportunity to oppose their imposition, and there was evidence that plaintiff incurred excess attorney fees attributable to defendant's delay in the production of documents. Sanctions are not precluded by the absence of a finding of contempt. N.C.G.S. § 50-21(e).

### 6. Divorce— equitable distribution—distributive award—business holdings

The trial court's decision in an equitable distribution action to distribute business holdings to plaintiff created the need for a distributive award to defendant. The court's findings were sufficient to support its decision and the court did not abuse its discretion in the distribution of the parties' assets.

Appeal by defendant from judgment entered 8 June 2007 by Judge Rebecca T. Tin in Mecklenburg County District Court. Heard in the Court of Appeals 16 April 2008.

**WIRTH v. WIRTH**

[193 N.C. App. 657 (2008)]

*M. Clark Parker, for plaintiff-appellee.*

*Horack, Talley, Pharr & Lowndes, PA, by Kary C. Watson, for defendant-appellant.*

STEELMAN, Judge.

Where the trial court was unable to determine whether the diminution in value of a corporation was due to the actions of defendant or to forces beyond his control, the trial court erred in treating the diminution in value as non-divisible property and considering it as a distributional factor. Where the parties entered into a consent order distributing certain marital assets, the trial court did not err in using the valuation set by the parties in the consent order in its final equitable distribution order. When the consent order distributed proceeds from the sale of the marital residence to plaintiff, any interest earned on the proceeds was separate and not marital property. Where defendant made postseparation payments on marital debts, and was awarded a credit for that amount towards his postseparation support arrearage, the trial court did not abuse its discretion in not allowing a second credit in equitable distribution. Where defendant fully briefed and argued to the trial court the issue of attorneys' fees pursuant to N.C. Gen. Stat. § 50-21(e), without objection to improper notice, he cannot complain about lack of notice on appeal. The trial court did not abuse its discretion in awarding attorneys' fees or in ordering plaintiff to pay a distributive award to defendant.

## I. Factual and Procedural Background

Diane S. Wirth (plaintiff) filed this action against her husband, Peter J. Wirth (defendant), on 24 November 2003 seeking equitable distribution of the parties' marital property, postseparation support, alimony, injunctive relief, interim distribution, appointment of a receiver, divorce from bed and board, and attorneys' fees. Defendant filed a counterclaim also seeking equitable distribution.

On 23 August 2004, the trial court entered an order making interim distributions of property. On 18 January 2005, the parties entered into a Consent Order ("Consent Order"), which distributed a condominium unit owned by the parties at the Pinnacle Inn, Beach Mountain, North Carolina (hereinafter referred to as the "Condominium") to the plaintiff at a net fair market value of $75,000.00. The Consent Order also distributed to plaintiff the former marital residence, with directions that plaintiff sell the residence with the net proceeds from the sale to be awarded to plaintiff.

The trial on the equitable distribution claims and plaintiff's claim for alimony took place over six days in November 2006 and five days in February 2007. In addition, each party submitted written final arguments to the court on 23 March 2007, with plaintiff's argument being forty-one pages in length, and defendant's argument being forty-two pages in length. On 16 February 2007, Judge Tin entered an interim order containing detailed findings of fact and conclusions of law dealing with the parties' business interests. On 18 June 2007, Judge Tin entered an Equitable Distribution Judgment and also a Judgment and Order dealing with alimony, plaintiff's claim for attorneys' fees, and contempt. The Equitable Distribution Judgment made an unequal distribution of marital property, awarding defendant 54.27% of the net fair market value of the marital property, and 45.73% to plaintiff. This judgment ratified, confirmed, and incorporated by reference certain of the findings of fact contained in the 16 February 2007 order, and made some additional findings as to the parties' business interests. Defendant appeals only the Equitable Distribution Judgment.

## II.  Divisible Property

In his first argument, defendant contends the trial court erred in failing to classify, value, and distribute certain property that was divisible property. We agree in part and disagree in part.

### A.  Decrease in Value of Testa & Wirth, Inc. of North Carolina

[1] Testa & Wirth, Inc. of North Carolina ("TWNC") is a North Carolina corporation engaged in the business of general contracting. As of the date of separation ("DOS") and the date of distribution ("DOD"), defendant was the sole shareholder. The trial court found that defendant remained in control of TWNC both before and after DOS and concluded that the losses incurred by TWNC were not divisible property. The final order valued TWNC at $0.00 as of DOD and TWNC was distributed to defendant with a value of $403,340.00 as of DOS. In paragraph 48(j) of the order, the court treated the decrease in value as a distributional factor.

Neither party contests that TWNC was marital property. Instead, defendant argues that Judge Tin erred in failing to classify the decrease in TWNC's value as divisible property. Defendant contends that the decrease in value was due to economic conditions and other circumstances which were beyond his control, and that the decrease should thus have been classified as divisible property and distributed to both parties. Defendant cites to paragraph 48(h) of the final order in support of his position:

Husband remained in control of TWNC after DOS and was the person responsible for managing its affairs. Notwithstanding facts demonstrating that the seeds of destruction of TWNC were in motion well prior to DOS, and stemmed, in large part, from events that were out of the control of Husband, the Court nonetheless finds that the decrease in the value of Husband's interest in TWNC after DOS is not divisible property. It is impossible to separate losses incurred due to Husband's active control over the company from losses which were incurred due to forces beyond his control. Contracts that went sour were nonetheless contracts and obligations taken on by Husband.

Defendant contends that this finding necessitated a holding by the trial court that the decrease in the value of TWNC was divisible property.

We agree with defendant. N.C. Gen. Stat. § 50-20 provides that, in an equitable distribution proceeding, the trial court "shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties . . ." N.C. Gen. Stat. § 50-20(a) (2007). Subsection (b)(1) defines "marital property" to include "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties[.]" N.C. Gen. Stat. § 50-20(b)(1) (2007). Divisible property is defined in subsection (b)(4)(a) to include:

> All appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, except that appreciation or diminution in value which is the result of postseparation actions or activities of a spouse shall not be treated as divisible property.

N.C. Gen. Stat. § 50-20(a)(b)(4)(a) (2007).

Under the plain language of the statute, all appreciation and diminution in value of marital and divisible property is presumed to be divisible property *unless* the trial court finds that the change in value is attributable to the postseparation actions of one spouse. Where the trial court is unable to determine whether the change in value of marital property is attributable to the actions of one spouse, this presumption has not been rebutted and must control. *See Allen v. Allen*, 168 N.C. App. 368, 371-72, 607 S.E.2d 331, 334-35 (2005).

In the instant case, the trial court's finding clearly states that it was impossible to determine what portion of the decrease in value of TWNC was due to forces which were beyond defendant's control, and what amount was attributable to defendant's active postseparation management of the company. Thus, the presumption created by N.C. Gen. Stat. § 50-20(b)(4)(a) was not rebutted, and the trial court's finding does not support its conclusion that the decrease in value was not divisible property.

We hold that the trial court erred in failing to classify the decrease in the value of TWNC as divisible property and in treating the decrease as a distributional factor. This portion of the Equitable Distribution Judgment is reversed and remanded to the trial court. *See Robertson v. Robertson*, 167 N.C. App. 567, 575, 605 S.E.2d 667, 672 (2004). The diminution in value of TWNC is to be treated as divisible property and not as a distributional factor. The court is to recompute its equitable distribution award in accordance with these principles.

### B. Increase in Value of the Condominium

**[2]** Defendant next contends that the trial court erred in failing to classify, value, and distribute the increase in value of the Condominium from DOS to DOD. We disagree.

N.C. Gen. Stat. § 50-20(i1) governs interim distributions of marital property. The statute permits the trial court to distribute the marital property of the parties pending a final equitable distribution trial. N.C. Gen. Stat. § 50-20(i1) (2007). The statute provides that any interim order "shall be taken into consideration at trial and proper credit given." *Id.*

> Courts look with favor on stipulations designed to simplify, shorten, or settle litigation and save cost to the parties, and such practice will be encouraged. While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them. . . . Once a stipulation is made, a party is bound by it and he may not thereafter take an inconsistent position.

*Moore v. Richard West Farms, Inc.*, 113 N.C. App. 137, 141, 437 S.E.2d 529, 531 (1993) (internal quotations and citations omitted).

**WIRTH v. WIRTH**

[193 N.C. App. 657 (2008)]

The Consent Order entered into by the parties provided for the distribution of certain real estate properties owned by the parties. The Condominium and its accompanying mortgage were distributed to plaintiff, and the parties agreed:

> [t]he distribution of [the Condominium] is "final" for purposes of equitable distribution, and Plaintiff shall have the right to own, possess, encumber, lease, sell, and otherwise deal with [the Condominium] as she sees fit. For purposes of equitable distribution, [the Condominium] . . . has a net fair market value of $75,000.00, and [the Condominium] shall constitute a portion of Plaintiff's share of the marital property of the parties.

In the Equitable Distribution Judgment, the trial court found that the Consent Order precluded any further valuation and distribution of the Condominium, and distributed the Condominium to plaintiff at a value of $75,000.00 in accordance with the terms of the Consent Order. Defendant argues that the Condominium substantially increased in value due to market forces from the time of the Consent Order to the equitable distribution trial, and that the trial court erred in failing to "classify, value and distribute the divisible property created by the appreciation of the [Condominium] . . ."

The Consent Order in the instant case specifically stated that it was a "final" distribution and provided for a valuation amount of the Condominium "[f]or purposes of equitable distribution." By its own terms, the Consent Order had the effect of precluding further valuation of certain of the parties' assets by the trial court at the final equitable distribution trial. It further precluded any consideration of the appreciation of this property as divisible property. The court gave plaintiff credit for the Condominium in the amount of $75,000.00 pursuant to the terms of the Consent Order.

Although defendant now wishes to take a position inconsistent with the clear terms of the Consent Order, we hold that he is bound by its terms. *See Moore* at 141, 437 S.E.2d at 531. Parties should be encouraged to settle as many matters as possible prior to equitable distribution trials, and we will not discourage such contractual agreements by interpreting them in a way contrary to their express terms.

We hold that the trial court did not err in valuing the Condominium at the amount specified in the parties' Consent Order.

## C.  Interest Earned on Proceeds From Sale of Former Marital Residence

**[3]** Defendant next contends that the trial court erred in failing to classify, value, and distribute the interest earned on the proceeds from the sale of the former marital residence. We disagree.

The Consent Order provided that plaintiff was to sell the marital residence, that the net proceeds from the sale were to be distributed to plaintiff, and

> [i]f the Marital Residence is sold prior to the trial of the equitable distribution claims the amount of net proceeds from the sale of the property, as determined above, shall constitute the net fair market value of the marital residence for purposes of equitable distribution.

Plaintiff sold the marital residence in July 2006 and deposited the net proceeds into a money market account. The trial court found that the interest earned on the money market account was not divisible property and did not distribute it in the Equitable Distribution Judgment.

The parties' Consent Order provided a specific formula by which the net proceeds were to be distributed to plaintiff. Once distributed, the property and the proceeds from its sale became plaintiff's separate property. We hold that the trial court correctly found that the Consent Order "preclude[d] any additional value being associated with [the former marital residence] in the form of divisible property."

## D.  Postseparation Payments on Marital Debt

**[4]** Defendant next contends that Judge Tin erred in failing to classify, value, and distribute the payments made by defendant on the interest-only mortgage loans for the former marital residence and the Condominium. We disagree.

N.C. Gen. Stat. § 50-20(b)(4)(d) provides that divisible property includes "[i]ncreases and decreases in marital debt and financing charges and interest related to marital debt." *Id.* "A trial court must value all marital and divisible property . . . in order to reasonably determine whether the distribution ordered is equitable." *Cunningham v. Cunningham*, 171 N.C. App. 550, 556, 615 S.E.2d 675, 680 (2005) (citation omitted). The distribution of marital property is within the discretion of the trial court. *Lawing v. Lawing*, 81 N.C. App. 159, 162, 344 S.E.2d 100, 104 (1986). "Accordingly, the trial

court's rulings in equitable distribution cases receive great deference and may be upset only if they are so arbitrary that they could not have been the result of a reasoned decision." *Id.* "[O]ur Supreme Court impliedly approved the use of a credit as a means of taking into consideration postseparation payments made towards marital debts in *Wiencek-Adams v. Adams,* 331 N.C. 688, 417 S.E.2d 449 (1992)." *Smith v. Smith,* 111 N.C. App. 460, 510, 433 S.E.2d 196, 226 (1993), *rev'd in part on different grounds,* 336 N.C. 575, 444 S.E.2d 420 (1994).

From November 2003 to spring of 2004, defendant made payments totaling $41,967.00 on the two interest-only mortgage loans associated with the former marital residence. The record reveals that the trial court took into account these payments made by defendant, and found that defendant received credit for the payments through a credit to his postseparation support arrearage. The trial court found that, as a result of this credit, "there was no divisible property related to Husband's interest payments."

We hold that the trial court properly considered defendant's postseparation payments made towards the marital debt and gave him credit for those payments. *See Warren v. Warren,* 175 N.C. App. 509 (finding that the trial court erred by making insufficient findings of fact regarding postseparation payments on marital debt). The trial court did not abuse its discretion in its treatment of defendant's postseparation payments. *See Smith* at 510, 433 S.E.2d at 226.

Defendant's arguments are without merit.

### III. Attorneys' Fees

[5] In his second argument, defendant contends the trial court erred in ordering him to pay to plaintiff $30,000.00 in attorneys' fees as sanctions. We disagree.

N.C. Gen. Stat. § 50-21(e) (2007) provides that a trial court may impose sanctions on a party in the form of attorneys' fees where the court finds:

(1) The party has willfully obstructed or unreasonably delayed, or has attempted to obstruct or unreasonably delay, discovery proceedings, including failure to make discovery pursuant to G.S. 1A-1, Rule 37, or has willfully obstructed or unreasonably delayed or attempted to obstruct or unreasonably delay any pending equitable distribution proceeding, and

(2) The willful obstruction or unreasonable delay of the proceedings is or would be prejudicial to the interests of the opposing party.

N.C. Gen. Stat. § 50-21(e)(1) and (2). On appeal, the standard of review of the trial court's decision of whether to order sanctions pursuant to N.C. Gen. Stat. § 50-21(e) is that of abuse of discretion, and the court's decision will be upheld unless the award is manifestly unsupported by reason. *Dalgewicz v. Dalgewicz,* 167 N.C. App. 412, 425, 606 S.E.2d 164, 172 (2004); *Crutchfield v. Crutchfield,* 132 N.C. App. 193, 195, 511 S.E.2d 31, 34 (1999).

### A. Notice

Defendant first contends that he did not receive proper notice that he was subject to sanctions. We disagree.

Although "N.C.G.S. § 50-21(e) is silent as to what type of notice is required under the statute and how far in advance notice must be given to a party facing sanctions[,]" *Megremis v. Megremis,* 179 N.C. App. 174, 179, 633 S.E.2d 117, 121 (2006), "a party has a due process right to notice both (1) of the fact that sanctions may be imposed, and (2) the alleged grounds for the imposition of sanctions." *Zaliagiris v. Zaliagiris,* 164 N.C. App. 602, 609, 596 S.E.2d 285, 290 (2004) (citation omitted).

Defendant cites *Megremis* and *Zaliagiris* for the proposition that sanctions imposed pursuant to N.C. Gen. Stat. § 50-21(e) without proper notice must be vacated. In *Zaliagiris,* "our Court held that the trial court erred in summarily recasting an assessment of expert witness costs as a sanction, without notice to the sanctioned party that the party would be made subject to such a sanction." *Megremis* at 180-81, 633 S.E.2d at 122 (citing *Zaliagiris* at 609-10, 596 S.E.2d at 290-91). In *Megremis,* we held that defendant's due process rights were violated where there was no written request for sanctions, no separate hearing on the issue of sanctions, and defendant received no notice regarding sanctions prior to the equitable distribution trial at which sanctions were imposed. *Megremis* at 181, 633 S.E.2d at 122.

The facts of the instant case are distinguishable from both *Megremis* and *Zaliagiris.* On 23 March 2007, plaintiff filed a written closing argument with the trial court, in which she requested "fees pursuant to § 50-21(e) which relate to additional time, effort and cost expended by the Plaintiff and her attorneys in obtaining the neces-

**WIRTH v. WIRTH**

[193 N.C. App. 657 (2008)]

sary documentation to identify, classify and distribute the marital assets. The amount requested is $67,214.00." On that same day, defendant submitted a written closing argument in which he argued against plaintiff's request for sanctions. The trial court issued its Equitable Distribution Judgment, which included sanctions against defendant, on 8 June 2007, over two months after defendant's argument was filed.

We first note that defendant did not raise the issue of notice in his written closing argument, and he has failed to preserve this issue for appellate review. N.C. R. App. P. 10(b)(1) (2008). Further, although this Court held in *Megremis* that there was insufficient notice to the defendant regarding the possibility of sanctions when the defendant did not receive notice prior to trial, we note that the sanctions in *Megremis* were imposed by the trial court at trial. Thus, *Megremis* stands for the proposition that a party must have notice regarding the imposition of sanctions before the date on which those sanctions are imposed. Because defendant in the instant case had notice of and submitted an argument against plaintiff's request for sanctions over two months before the court imposed the sanctions, we hold that this constituted sufficient notice of the possibility that the trial court would impose sanctions. Defendant was aware of the nature of the requested sanctions, and was provided an opportunity to argue against their imposition.

This argument is without merit.

### B. Abuse of Discretion

Defendant next contends that the trial court abused its discretion in finding that defendant unreasonably delayed the proceedings and that plaintiff was prejudiced by his actions. We disagree.

The trial court made the following findings of fact:

148. . . . the Court and counsel for Wife spent far too much time struggling to procure the documents and records needed for the court-appointed expert to value all of Husband's various business interests. The case would have been delayed even more if Wife's counsel had not persevered by filing motions to compel and pressing for the production of additional documents. Wife's counsel also issued subpoenas to third parties and entities to obtain documents which Husband had not produced.

149. . . . . the Court finds that Husband unreasonably delayed the discovery process to some extent.

. . .

151. Taking into consideration the time spent as the result of Husband's delay, the hourly charges of Wife's attorney, the results obtained by Wife's attorney in obtaining various documents, and other factors, the Court finds that a reasonable sum to require Husband to pay to Wife for attorneys' fees incurred by her as the result of Husband's delay is the sum of $30,000.00.

Defendant does not contend that the trial court did not make adequate factual findings regarding its award of attorneys' fees, but that the trial court abused its discretion in awarding attorneys' fees.

There is evidence in the record that plaintiff incurred attorneys' fees greatly in excess of the $30,000.00 awarded by the trial court that were attributable to defendant's delay in the production of documents. Plaintiff made an initial request for production of documents to defendant in March of 2004. Defendant's response to this request was incomplete, and supplemental responses were made by defendant between June of 2004 and March of 2005. The parties' attorneys conferenced on 1 April 2005 and discussed the deficiencies in the production of documents. Plaintiff's attorney delivered a list of specific deficiencies to defendant's attorney on 7 April 2005, but defendant did not produce any of these documents until 11 July 2005, after plaintiff's attorney wrote a letter warning of a motion to compel if production was not made. The supplemental response made by defendant on 11 July was incomplete, and on 21 July 2005 plaintiff filed a motion to compel. The trial court issued an order in October 2005 requiring defendant to respond within seven days as to why he was unable to produce the balance of the requested documents.

The production of documents in this case occurred over a period of time that was at least nineteen months. Although the trial court did not find that defendant was in contempt, defendant cites no authority, and we find none, which precludes the imposition of sanctions absent a finding of contempt.

The trial court's findings of fact regarding plaintiff's attorneys' fees are supported by competent evidence. The amount of fees awarded was reasonable, and we hold that the trial court did not abuse its discretion in either the imposition or the amount of the sanction.

This argument is without merit.

## IV. Distributive Award

[6] In his final argument, defendant contends that the trial court erred in ordering plaintiff to pay a distributive award of $220,542.00. We disagree.

"N.C. Gen. Stat. § 50-20(e) [2007] creates a presumption that an in-kind distribution of marital or divisible property is equitable, but permits a distributive award 'to facilitate, effectuate, or supplement' the distribution." *Allen* at 372-73, 607 S.E.2d at 334. In order to rebut the presumption of an in-kind distribution, the equitable distribution judgment must contain a finding, supported by evidence in the record, that an in-kind distribution would be impractical. *Id.*; *Brown v. Brown*, 112 N.C. App. 15, 19, 434 S.E.2d 873, 877 (1993). "[A] trial court's failure to comply with the provisions of the equitable distribution statute constitutes an abuse of discretion." *Pott v. Pott*, 126 N.C. App. 285, 289, 484 S.E.2d 822, 826 (1997).

The trial court's decision to distribute several business holdings to plaintiff created the need for a distributive award to defendant. Defendant contends that it was error for the court to distribute these companies to plaintiff where plaintiff did not possess any business experience or acumen.

A review of the record reveals that the business interests distributed to plaintiff did not require the active operation or management by plaintiff. The trial court found:

> The "in-kind" distribution of marital and divisible property and debt is controlled largely by (1) the stipulations of the parties which are set out in the Schedule, and (2) the Court's decision to distribute to Wife those business interests which are more susceptible to being liquidated.

The court further found that the five businesses owned with the Testa brothers should be distributed to one person in order to maximize the value of the companies.

We hold that the trial court's findings are sufficient to support its decision to make a distributive award. We further hold that the trial court did not abuse its discretion in its distribution of the parties' assets. *See Pott* at 289, 484 S.E.2d at 826.

This argument is without merit.

Assignments of error listed in the record but not argued in defendant's brief are deemed abandoned. N.C. R. App. P. 28(b)(6) (2008).

REVERSED and REMANDED in part; AFFIRMED in part.

Judges HUNTER and STEPHENS concur.